## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, Morgan McIntosh, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

I, Morgan A. McIntosh, being duly sworn, depose and state that:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives, (ATF), United States Department of Justice, and have been so employed since August 2022. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training Program. During my career, I have conducted and/or participated in numerous federal and state criminal investigations relating to narcotics and firearms violations resulting in arrest warrants being issued and successful prosecution.

2. The information contained in this affidavit is based on my personal knowledge and experience, the investigation, and information provided by other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. § 922(g)(5), Possession of a Firearm by an Illegal Alien, with regard to both Suspect 1 and Suspect 2 as well as 8 U.S.C. § 1326(a), Reentry After Deportation/Removal, with regard to Suspect 1.

### CASE BACKGROUND

3. On March 13, 2025, at approximately 11:30 AM, federal agents with Homeland Security Investigations (HSI), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), and Enforcement and Removal Operations (ERO) began a surveillance operation at "In and Out Tires" located at 7605 Preston Highway in Louisville, Jefferson County, Kentucky (herein referred to as the **TARGET ADDRESS**). The surveillance operation was in support of ERO Operation Safeguard.

4. Agents were present at the **TARGET ADDRESS** attempting to surveil and arrest Humberto AVILA-DURAN (Date of Birth: 03/XX/1971, Alien Registration Number 079517449, FBI#405981WB2) who is a Mexican citizen unlawfully present in the United States (herein referred to as **SUSPECT 1**). Agents with Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) conducted a search of immigration databases, which confirmed AVILA-DURAN was a Mexican citizen previously removed from the United States. AVILA-DURAN was assigned alien

registration number 079517449 in 2002, and his biometric data was a positive match for the following immigration history:

On April 30, 2002, AVILA-DURAN was encountered at Jefferson County Detention Center in Louisville, Kentucky. On May 8, 2002, AVILA-DURAN was placed into Removal Proceedings. On March 20, 2003, AVILA-DURAN was ordered removed "in absentia" by an Immigration Judge in Louisville, Kentucky after failing to appear in immigration court. On August 21, 2003, AVILA-DURAN was served with a Final Order of Removal. On December 29, 2010, AVILA-DURAN was encountered by ICE in Louisville, Kentucky and subsequently taken into custody pursuant to the aforementioned facts. On January 21, 2011, AVILA-DURAN was removed to Mexico.

On March 3, 2011, AVILA-DURAN was apprehended by U.S. Border Patrol (USBP) agents for illegal entry near Concepcion, Texas. AVILA-DURAN was served with a Reinstatement of a Prior Order of Removal and was removed to Mexico on the same day.

On March 6, 2011, AVILA-DURAN was apprehended by USBP agents for illegal entry near Mission, Texas and was served with a Reinstatement of a Prior Order of Removal. AVILA-DURAN was removed to Mexico on March 8, 2011.

On July 31, 2012, AVILA-DURAN was encountered by ICE in Louisville, Kentucky and served with a Reinstatement of a Prior Order of Removal. On August 14, 2012, AVILA-DURAN was removed to Mexico.

On May 8, 2014, AVILA-DURAN was apprehended by USBP agents for illegal entry near Calexico, California and was served with a Reinstatement of a Prior Order of Removal. On May 9, 2014, AVILA-DURAN was removed to Mexico.

On May 12, 2014, AVILA-DURAN was apprehended by USBP for illegal entry near San Ysidro, California and was served with a Reinstatement of a Prior Order of Removal. On May 13, 2014, AVILA-DURAN was removed to Mexico.

On June 11, 2020, AVILA-DURAN was encountered by Louisville Metropolitan Police Department. On July 9, 2020, AVILA-DURAN was issued an Order of Removal. On November 13, 2020, AVILA-DURAN was removed to Mexico.

5. DHS databases checks confirm AVILA-DURAN was a positive match for the following criminal history:

On April 29, 2002, AVILA-DURAN was arrested by Jefferson County Police Department for Assault – 2nd Degree.

On November 5, 2009, AVILA-DURAN was arrested by Louisville Metropolitan Police Department (LMPD) for Operating While Intoxicated (OWI). On January 19, 2010, AVILA-DURAN was convicted of OWI and sentenced to 30 days confinement.

    On December 22, 2010, AVILA-DURAN was arrested by LMPD for OWI. AVILA-DURAN was convicted of OWI and sentenced to 30 days confinement.

    On August 6, 2011, AVILA-DURAN was arrested by Clarksville (IN) Police Department for Burglary using the alias "Fabian D. Avila". On July 23, 2012, AVILA-DURAN was convicted of Theft and sentenced to 1 year.

    On December 20, 2019, AVILA-DURAN was arrested by LMPD for Enhanced Trafficking in Controlled Substances (TICS) – Cocaine/Drug Unspecific, Enhanced Trafficking in Marijuana, and Enhanced Drug Paraphernalia – Buy/Possess. During the arrest, an illegally possessed firearm was recovered from the residence of AVILA-DURAN.

Records also indicate that AVILA-DURAN's has used the following aliases when encountered in the United States:

    AVILA, FABIAN
    AVILA, FABIAN DURAN
    AVILA, HUMBERTO
    AVILA-DURAN, HUMBERTO
    AVILA DURAN, ROBERTO
    BAUTISTA, RENE
    DURAN, HUMBERTO
    DURAN, HOMBERTO

AVILA-DURAN's arrests also indicate he has used the following dates of birth when arrested:

    March 27, 1971
    March 26, 1971

6. Agents observed **SUSPECT 1** exit the **TARGET ADDRESS** and begin working in the parking lot on the south side of the building. Shortly thereafter, agents approached **SUSPECT 1** and administratively arrested him. A search of his person incident to arrest was conducted revealing a set of key(s) in his pocket. He was subsequently advised of his Miranda Rights.

7. Subsequent to **SUSPECT 1's** arrest, agents inquired how **SUSPECT 1** would like to secure his business. **SUSPECT 1** asked for the back garage door to be shut and that his son would take care of the rest. Prior to agents entering the **TARGET ADDRESS**, agents asked if there were any occupants in the business and **SUSPECT 1** stated that no one was there. When agent(s) walked inside through the plastic curtain covering the open garage door at the side of the business to secure the garage door, they encountered a Hispanic male. Agent(s) asked who he was and if he would he step outside to talk. Once outside the business, the individual identified himself as the business owner's son, Humberto AVILA-MURILLO (Date of Birth: 09/XX/1996) (herein referred to as

**SUSPECT 2**). However, at the time of the initial encounter with **SUSPECT 2**, law enforcement had no reason to suspect any wrongdoing on the part of **SUSPECT 2**.

8. Upon seeing his father in custody, **SUSPECT 2** inquired as to the specifics of his father's arrest. During this conversation ERO agents asked administrative questions regarding **SUSPECT 2**'s alienage. **SUSPECT 2** stated he is a United States Citizen (USC), but later stated he was born in Baja California, Mexico, and was brought to the United States as a child by his parents. **SUSPECT 2** stated he could not produce proof of identification to include any immigration documents that would allow for his lawful presence in the United States. **SUSPECT 2** further stated he did not have a Social Security Number. It was at this point that ERO determined him to be an illegal alien and he was no longer free to leave.

9. A short time later, a DEA agent observed a pistol handgrip protruding from **SUSPECT 2**'s right pants pocket. **SUSPECT 2** was arrested and the firearm was removed from his pants pocket by an ATF agent. He was advised of his Miranda Rights and agreed to speak to agents. During the conversation, **SUSPECT 2** stated he owned the firearm in his pocket. **SUSPECT 2** stated he purchased the firearm from a friend at a gun show approximately five years ago. Agents asked **SUSPECT 2** to describe the firearm to which he stated the firearm was a Glock 26, 9mm. **SUSPECT 2** stated he possessed the firearm for protection. Agents observed the markings on the firearm identifying it as a Glock, model 26, 9mm caliber semiautomatic pistol, SN: AGBR436.

10. After the discovery of the firearm, agents asked **SUSPECT 2** if there were any additional firearms inside of the **TARGET ADDRESS**. **SUSPECT 2** stated his father, **SUSPECT 1**, possessed two firearms inside of the target address, to include an old non-functioning revolver and a multi-colored Taurus 9mm caliber pistol.

11. During the interview of **SUSPECT 2**, **SUSPECT 1** was transported by ERO agent(s) to process **SUSPECT 1** at their office. After the admission of additional firearms on the premises of the **TARGET ADDRESS** by **SUSPECT 2**, agents requested **SUSPECT 1**'s return to the premises. Upon his return, **SUSPECT 1** was reminded of his Miranda Rights and waiving these rights, agreed to speak with agents.

12. During the interview, agents asked **SUSPECT 1** if he owned any firearms. **SUSPECT 1** stated he owned a tan Taurus 9mm caliber pistol that he kept inside of the **TARGET ADDRESS**. **SUSPECT 1** stated he possessed the firearm for protection. **SUSPECT 1** further admitted to possessing multiple boxes of ammunition. **SUSPECT 1** stated he possessed the ammunition because he used to sell it at gun shows.

13. During the interview, **SUSPECT 1** stated he owns the business "In and Out Tires", located at the **TARGET ADDRESS**. **SUSPECT 1** stated his name is on the building's business lease. **SUSPECT 1** also stated his daughter (JA), is listed on the building's business lease. After obtaining this information, agents asked **SUSPECT 1** for his consent to search the **TARGET ADDRESS**, and a connected camper trailer residence (which he identified as his residence) connected to the rear of the **TARGET ADDRESS**.

        **SUSPECT 1** consented to a search of the **TARGET ADDRESS** and his attached residence and signed a Spanish language consent to search form for the **TARGET ADDRESS** upon having it read to him. It was further explained to **SUSPECT 1,** in English and in Spanish, that he could revoke consent at any time during the search and that agents would immediately cease the search.

14. Agents also called JA, the aforementioned daughter, to the scene. JA arrived at the **TARGET ADDRESS**. Agents obtained written consent to search the **TARGET ADDRESS** from JA, who was provided with Affiant's contact information in the event that she wanted to revoke consent to search the **TARGET ADDRESS**.

15. Agents conducted a search of the **TARGET ADDRESS**, and the residential structure attached to the rear of the building. During the search, agents discovered two firearms and loose ammunition of assorted calibers in the **TARGET ADDRESS**; and numerous boxes of ammunition of assorted calibers located in the residential structure. One firearm was located in a locked toolbox. The toolbox drawer was accessed using the key recovered from the search incident to arrest of **SUSPECT 1**. This firearm is further described as a black and tan Taurus, model G3, 9mm caliber semiautomatic pistol, SN: ACG987542. The second firearm was located hanging on the wall behind the desk in the office of the **TARGET ADDRESS**. This firearm is further described as a silver Beretta, model Stampede, .45 Long Colt caliber revolver, SN: B05296.

16. An ATF Interstate Nexus Expert examined the three seized firearms identified above and determined that they were not manufactured within the Commonwealth of Kentucky and therefore traveled in interstate and/or foreign commerce.

17. A review of electronic immigration records shows **SUSPECT 1** has not received permission from the Attorney General of the United States or the Secretary of Homeland Security to re-enter the United States following his previous removals and he is currently present in the United States without admission or parole after being previously removed.

## CONCLUSION

Based on the above information, your affiant believes as follows:

A. That Humberto AVILA-DURAN (Suspect 1), is an alien who has been found in the United States in Jefferson County in the Western District of Kentucky, in violation of 8 U.S.C. § 1326(a) to wit: unlawful re-entry of an alien previously removed or deported from the United States;

B. That Humberto AVILA-DURAN (Suspect 1), is an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5); and

C. That Humberto AVILA-MURILLO, (Suspect 2), is an illegal alien in possession of a firearm, in violation of 18 USC § 922(g)(5).

/s/ *Morgan A. McIntosh*
Morgan A. McIntosh
Special Agent – ATF

Attested to by the applicant in accordance with the reqirements of Fed. R. Crim. P. 4.1(a) by telephonic and email submission on this the __14 day of March 2025.

Regina S. Edwards
United States Magistrate Judge

MAB;JEL